UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                    :
STEVEN KANE,                                        :        DECISION AND ORDER
                                                    :
                          Plaintiff,                :        11-cv-3254 (WFK)
                                                    :
              -against-                             :
                                                    :
MICHAEL J. ASTRUE, Commissioner of Social           :
Security,                                           :
                                                    :
                          Defendant.                :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

Steven Kane ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), claiming that

the Commissioner of Social Security ("Defendant") improperly denied his application for Social

Security disability insurance benefits.  Plaintiff moves for an order reversing the Commissioner's

decision or, in the alternative, remanding his case back to the Commissioner for further

proceedings.  Defendant moves for an order affirming the decision.  For the reasons that follow,

this Court reverses the Commissioner's decision denying disability benefits and remands for

further consideration.

### GENERAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born in 1963 and has a ninth-grade education.  Tr. at 16, 89, 130.  From

1979 to 2008, he worked in construction and home improvement.  *Id.* at 17, 127.  In February

2008, Plaintiff fell down several steps while working.  *Id.* at 17, 89.  A few weeks later, Plaintiff

tried to return to work, but stopped after three days due to severe pain.  *Id.* at 17.

On June 25, 2009, Plaintiff filed an application for disability benefits with the Social Security Administration ("SSA"), claiming that he had cervical, left shoulder, and lumbar sprains from his February 2008 fall and was unable to work. *Id.* at 89–90, 126. The application was denied. *Id.* at 35, 50–57. Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Andrew S. Weiss on May 13, 2010. *Id.* at 13–34. Two weeks later, the ALJ found Plaintiff was not disabled and denied him benefits. *Id.* at 36–45. Plaintiff sought review of the ALJ's decision by the Social Security Administration's ("SSA") Appeals Council. *Id.* at 11–12. On May 19, 2011, the Appeals Council denied Plaintiff's request for review, rendering ALJ Weiss' decision the final decision of the Commissioner. *Id.* at 1–6. Plaintiff then petitioned this Court for review.

## STANDARD OF REVIEW

When a claimant challenges the SSA's denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart,* 388 F.3d 377, 384 (2d Cir. 2004); *see also Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)); *Moran,* 569 F.3d at 112 (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)). The substantial-evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. *See, e.g., Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208,

2

214 (S.D.N.Y. 1999) (Sweet, J.).  In determining whether the record contains substantial

evidence to support a denial of benefits, the reviewing court must examine the entire record,

weighing the evidence on both sides to ensure that the claim "has been fairly evaluated." *See,*

*e.g.*, *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Grey v. Heckler*, 721 F.2d 41, 46

(2d Cir. 1983)) (quotation marks omitted).

It is the function of the SSA, not the courts, "to resolve evidentiary conflicts and to

appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health &*

*Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399); *see also*

*Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  Although the ALJ need not

resolve every conflict in the record, "the crucial factors in any determination must be set forth

with sufficient specificity to enable [the reviewing court] to decide whether the determination is

supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250, 269 (S.D.N.Y.

2010) (Sullivan, J.) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)) (quotation

marks omitted).  To fulfill this obligation, the ALJ must not only "adequately explain his

reasoning in making the findings on which his ultimate decision rests," but also must "address all

pertinent evidence." *Id.* "[A]n ALJ's failure to acknowledge relevant evidence or to explain its

implicit rejection is plain error." *Id.* (internal quotation marks omitted); *Rodriguez v. Astrue*, No.

11 CIV. 7720, 2012 WL 4477244, at *30 (S.D.N.Y. Sept. 28, 2012) (McMahon, J.) (quoting

*Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (W.D.N.Y.2002) (Siragusa, J.)) (same).

## DETERMINATION OF DISABILITY

### I.  Applicable Law

The Social Security Act defines the term "disability" to mean an "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

3

impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Burgess*, 537 F.3d at 119–20 (quoting 42 U.S.C. § 423(d)(1)(A)) (quotation marks omitted). In addition, "[t]he impairment must be of 'such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). While the claimant bears the burden of proving the first four steps, the burden shifts to the Commission at step five. *Rosa*, 168 F.3d at 77. In the first step, the Commissioner considers whether the claimant is presently working in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i); *Rosa*, 168 F.3d at 77. If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Rosa*, 168 F.3d at 77. If the severity requirement is met, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; *Rosa*, 168 F.3d at 77. If the claimant has such an impairment, there will be a finding of disability. If not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant's residual functional capacity allows the claimant to perform his or her past work. 20 C.F.R. § 404.1520(a)(4)(iv); *Rosa*, 168 F.3d at 77. Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work,

such as "light work" discussed *infra*, that the claimant could perform, taking into account, *inter alia*, the claimant's residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v); *Rosa*, 168 F.3d at 77.

**II.     The ALJ's Decision**

Using the five-step process, the ALJ found that:  1) Plaintiff had not engaged in any substantial gainful activity since February 29, 2008, the date of the accident; 2) Plaintiff has severe medically determinable impairments, namely cervical and lumbar syndromes and a left shoulder impairment; 3) Plaintiff's severe impairments do not meet nor medically equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) Plaintiff is unable to perform any relevant past work; and 5) Plaintiff has the residual functional capacity to perform the full range of "light work" as defined in 20 C.F.R. 404.1567(b).  Tr. 41, 44.  Pursuant to 20 C.F.R. 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," as well as "a good deal of walking or standing."  To be considered capable of performing light work, an individual must have the ability to do substantially all of these activities.  *Id.*

In determining that Plaintiff has the residual functional capacity to perform light work, which is the only determination contested by Plaintiff, the ALJ relied on Plaintiff's own testimony about his pain, medications, and difficulties with daily activities, as well as the medical opinions of seven physicians.

**A.  The ALJ's Treatment of Plaintiff's Testimony**

With regard to Plaintiff's testimony, the ALJ stated that Plaintiff testified about his chronic neck, back, and leg pain; numbness in his hands; his inability to obtain "relief from a variety of treatment modalities including medications, epidural steroid injections and facet

5

blocks"; and his difficulty sleeping more than two or three hours before having to get up to take medication. Tr. at 42. Plaintiff indicated he can drive short distances but spends most of his day watching television. *Id.*

### B. The ALJ's Treatment of the Testimony of Plaintiff's Treating Physicians

Next, the ALJ described the medical opinions of Plaintiff's two treating physicians, Dr. Mary Mattheos, a primary care physician, and Dr. Sunil Albert, a pain management physician. *Id.* at 42–43. Plaintiff has been under the care of both physicians since early 2008. *Id.* Dr. Mattheos diagnosed Plaintiff with chronic cervical and lumbar syndromes and a left shoulder impairment; Dr. Albert diagnosed Plaintiff with cervical and lumbar radiculopathy. *Id.* Three MRIs of Plaintiff's cervical spine, lumbar spine, and left shoulder revealed, *inter alia*, degenerative disc disease, disc bulges, prominent hypertrophic change of the acromioclavicular joint, and subacromial bursitis. *Id.*; *see also infra* note 1 for a full description of the MRI results. Because of these injuries, Plaintiff's treating physicians found that Plaintiff has decreased ranges of motion, difficulty bending, and muscle spasms. *Id.* Although Plaintiff has received various medications, epidural injections and facet blocks to treat his pain, Plaintiff's pain has persisted. *Id.*

Of particular relevance in this case is the ALJ's treatment of Dr. Mattheos's and Dr. Albert's evaluation of Plaintiff's ability to work. According to the ALJ:

> Dr. Albert refers to the [Plaintiff] as "out of work" and, at various intervals, as moderately and partially disabled. However, at no time does he note restrictions preclusive of lighter forms of work nor does he ever furnish quantifiable restrictions preclusive of work. Of note, the terms "moderately" and "partially" disabled are worker's compensation terms to assess the degree of disability referable to the claimant's usual employment (in this case heavier work) and do not equate to a finding of disability for the purposes of social security.

*Id.* at 43. In fact, Dr. Albert opined that Plaintiff had a "[m]oderate degree of disability" only in his early evaluations, from April to August 2008. *Id.* at 186–97. Beginning in his September

6

2008 report, and in every report thereafter, Dr. Albert consistently concluded Plaintiff was "[t]emporary [sic] totally disabled." *Id.* at 158–83, 286–99, 315–26.

> With regard to Dr. Mattheos, the ALJ stated:
>
> Functionally, [Dr. Mattheos] furnished a profile consistent with lighter forms of work activity in that she opined the [Plaintiff] could sit up to eight hours, stand/walk up to eight hours and had limitations regarding lifting/carrying and pushing/puling [sic]. Thereafter, on May 11, 2010, she furnished another residual functional capacity assessment form furnished to her by counsel, as both the [Plaintiff] and his attorney stated that Dr. Mattheos had some confusion regarding what was being asked for in terms of functional restriction in the first form. Therein, the doctor stated that, during the course of an eight hour workday, the [Plaintiff] can sit less than two hours, stand/walk less than two hours, and lift/carry no more than ten pounds, occasionally."

*Id.* at 42–43. In fact, Dr. Mattheos' first residual functional capacity assessment indicated Plaintiff cannot walk, sit, or stand without "great difficult[y]." *Id.* at 378. Dr. Mattheos also checked boxes that Plaintiff was limited in these activities, and checked additional boxes labeled "up to 8 hours per day." *Id.* at 381. At the hearing before the ALJ, Plaintiff's counsel stated that Dr. Mattheos was confused about whether the boxes "up to eight hours per day" meant that Plaintiff could engage in these activities up to eight hours per day or that Plaintiff was limited in these activities up to eight hours per day. *Id.* at 18–19, 24, 30. To clarify Dr. Mattheos' intent, Plaintiff's attorney had Dr. Mattheos complete a second evaluation form, in which she indicated that Plaintiff cannot sit or stand for more than twenty to thirty minutes at a time. *Id.* at 386. Plaintiff's attorney offered to have Dr. Mattheos provide a letter explaining her intention in filling out the forms. *Id.* at 18–19, 24, 30. The ALJ declined an additional letter, stating that he would take it on "face value" that Dr. Mattheos had been confused. *Id.* at 30.

7

### C. The ALJ's Treatment of the Testimony of the Independent Physicians

The ALJ then described the opinions of five independent physicians who examined Plaintiff: Dr. Maria DeJesus, Dr. Paul Miller, Dr. Alan Zimmerman, Dr. E. Austria, and Dr. Steven Litman. *Id.* at 43–44.

- Dr. DeJesus, a neurologist hired by Plaintiff's employer's worker's compensation insurance carrier, examined Plaintiff on May 6, 2008. *Id.* at 43. Dr. DeJesis found no indication of a neurological disability. *Id.*

- Dr. Miller, an orthopedic surgeon hired by Plaintiff's employer's worker's compensation insurance carrier, examined Plaintiff on September 15, 2008. *Id.* Dr. Miller "noted cervical, lumbar and left should strains/sprains" but found that Fabre, Ely, and Kemp testing was negative and Plaintiff's gait was normal. *Id.* Dr. Miller characterized Plaintiff's disability as "mild, partial" and concluded that Plaintiff "can work at occupations that do not involve lifting over 40 pounds." *Id.*

- Dr. Zimmerman, an orthopedic surgeon hired by Plaintiff's employer's worker's compensation insurance carrier, examined Plaintiff on March 24, 2009. *Id.* Dr. Zimmerman likewise characterized Plaintiff's disability as "partial" and opined that he "could work at occupations not involving lifting/carrying more than 25 pounds, occasionally." *Id.*

- Dr. E. Austria examined Plaintiff on September 16, 2009. *Id.* Dr. Austria "noted diagnoses of cervical, lumbar and left shoulder impairments." *Id.* Dr. Austria "also furnished a profile permissive of lighter forms of employment." *Id.*

- Dr. Litman, an orthopedist hired by Plaintiff's employer's worker's compensation insurance carrier, examined Plaintiff on October 20, 2009. *Id.* at 44. "Diagnoses included mild cervical radiculopathy; mild left shoulder arthropathy; and mild lumbar radiculopathy." *Id.* Dr. Litman "stated [Plaintiff] exhibited 'dramatic symptom amplification' and 'embellishment'" and "opined that [Plaintiff] could return to light duty work, involving lifting/carrying no more than twenty pounds." *Id.*

### D. The ALJ's Analysis and Conclusions

The ALJ "afford[ed] all of the examining physician's [sic] opinions weight as their conclusions are in accord with the record as a whole, including each other's physical examination findings and objective diagnostic testing." *Id.* By contrast, the ALJ "considered" Dr. Mattheos' opinion that Plaintiff cannot sit, stand, or walk more than two

hours or carry more than ten pounds, but "afford[ed] it little weight as said conclusion is contradicted by the weight of the clinical and diagnostic evidence for record." *Id.* at 42–43.

In deciding the weight to accord each physician's opinion, the ALJ did not use the multi-step process for determining how much weight to give each opinion, including those of the treating physicians, as required under 20 C.F.R. § 404.1527(c) and discussed *infra*. Nor did the ALJ consider additional medical opinions in the record, such as those by Dr. Thomas Dowling and Dr. Jimmy Lim, which supported Dr. Mattheos' opinion. Tr. 244–47, 418–21. In addition, as discussed *infra*, the ALJ failed to acknowledge significant deficiencies in the opinions of the five independent physicians, such as the fact that they made their findings without the benefit of all of the MRIs in the record.

Ultimately, "[a]fter careful consideration of the evidence, the [ALJ found] that the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* at 44. However, the ALJ found that Plaintiff's [statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* As discussed *infra*, the ALJ did not conduct the multi-factor credibility analysis required under C.F.R. § 404.1529(c)(3). Nor did the ALJ address how Plaintiff's continuous treatment for pain over a more than two-year period, including numerous medications, CESIs, and facet blocks, affects Plaintiff's credibility.

III. **Alleged Errors by the ALJ**

Plaintiff argues the ALJ erred at step five of the process when the ALJ concluded that Plaintiff has sufficient residual capacity to perform the full range of light work and therefore is

not entitled to disability benefits.  Plaintiff points to three specific errors the ALJ allegedly made

in reaching this decision:  1) the ALJ failed to give controlling weight to the treating physician's

reports; 2) the ALJ improperly rejected Plaintiff's description of his pain and the extent of his

impairments; and 3) the ALJ improperly evaluated the medical evidence.  This Court agrees.

### A. Treating Physician Rule

In evaluating the available medical evidence as part of an application for disability

benefits, "[t]he law gives special evidentiary weight to the opinion of the treating physician[s]."

*Clark*, 143 F.3d at 118.  Specifically, the regulations provide:

> Generally, [the SSA] give[s] more weight to opinions from [a claimant's] treating
> sources, since these sources are likely to be the medical professionals most able to
> provide a detailed, longitudinal picture of your medical impairment(s) and may
> bring a unique perspective to the medical evidence that cannot be obtained from
> the objective medical findings alone or from reports of individual examinations,
> such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).  For these reasons, the opinion of a treating physician must be given

controlling weight on the issue of the nature and severity of a claimant's impairments, if that

opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in your case record." *Id.*  If a treating

physician's opinion is not given controlling weight because it is not well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other

substantial evidence in the case record, then six factors must be assessed in order to determine

how much weight to afford the treating medical opinion and other medical opinions:  1) whether

the physician examined the claimant; 2) the nature and extent of the treatment relationship,

including the length of the relationship and the frequency of examination; 3) the evidence in

support of each opinion, such as medical signs, laboratory findings, and more complete

explanations; 4) the extent to which the opinion is consistent with the record as a whole; 5)

whether the medical provider is a specialist; and 6) any other relevant factors. *Id.* § 404.1527(c).

The Second Circuit has instructed that remand is appropriate "when the Commissioner has not

provided 'good reasons' for the weight given to a treating physician[']s opinion," or when

"opinions from ALJ[]s . . . do not comprehensively set forth reasons for the weight assigned to a

treating physician's opinion." *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

    In this case, Plaintiff has two treating physicians: Dr. Mary Mattheos and Dr. Sunil

Albert. Dr. Mattheos began treating Plaintiff in February 2008, and diagnosed him with cervical

and lumbar bulging disc/herniation and left shoulder problems. Tr. 378.[1] According to Dr.

Mattheos, Plaintiff cannot walk, sit, or stand without "great difficult[y]," *id.*, and suffers from

"constant[]" pain, *id.* at 386. Dr. Mattheos estimates Plaintiff cannot sit or stand for more than

twenty to thirty minutes at a time, cannot sit or stand for more than two hours total in an eight

hour working day, and cannot lift more than ten pounds on an occasional basis. *Id.*[2] Once

Plaintiff has exerted himself, he needs at least one to two hours of rest to recover. *Id.* at 380.

---

[1] An MRI conducted on Plaintiff's cervical spine on April 2, 2008 revealed a small central disc bulge and mild degenerative disease of the Luschka joints at C2–3; a right paracentral disc ridge, irregularity of the vertebral margin, pronounced hypertrophic change of the Luschka joints, and moderate to severe right foraminal stenosis at C3–4; a small broad based disc bulge, mild degenerative changes of the Luschka joints bilaterally, and mild central and bilateral foraminal narrowing at C4–5; and mild disc desiccation, minimal degree of disc bulge, minimal degenerative changes of the Luschka joints, and a slight asymmetry of the neural foramina at C5–6. Tr. 234–35. An MRI of Plaintiff's lumbar spine on September 16, 2008 revealed a "posterior disc bulge . . . at the L2/3 causing a small ventral impression upon the thecal sac," "[d]iffuse disc bulges . . . at the L4/5 and L5/S1 levels which impinge upon the thecal sac," "[m]oderate narrowing of the L5/S1 disc," and "[m]inimal bilateral facet hypertrophy . . . at the L5/S1 level." *Id.* at 199. An MRI of Plaintiff's left shoulder on February 11, 2009 found "prominent hypertrophic change of the acromioclavicular joint, subacromial bursitis, [and] subchondral cystic degenerative changes of the humeral head," but that the "rotator cuff tendons [were] intact." Tr. 198. And a lumbar discogram on January 18, 2010 showed concordant L2/3, L4/5, and L5/S1 discogenic pain. *Id.* at 244.

[2] Dr. Mattheos submitted two evaluations of Plaintiff's disability. Tr. 378–82, 386. In the first evaluation, dated May 4, 2010, Dr. Mattheos indicated Plaintiff cannot walk, sit, or stand without "great difficult[y]." *Id.* at 378. Dr. Mattheos also checked boxes that Plaintiff was limited in these activities, but then appeared to check boxes indicating that he could engage in these activities up to eight hours per day. *Id.* at 381. In light of these apparent contradictions, Plaintiff's attorney had Dr. Mattheos complete a second evaluation form, in which she indicated that Plaintiff cannot sit or stand for more than twenty to

Dr. Albert began treating Plaintiff in April 2008, and examined Plaintiff more than two dozen times over the next two years. *Id.* at 158–97, 286–99, 315–76. Based on these examinations, Dr. Albert diagnosed Plaintiff with cervical and lumbrosacral radiculopathy, cervical and lumbosacral radiculitis, myofascial pain syndrome / fibromyalgia syndrome, facet arthropathy syndrome, rotator cuff syndrome, and shoulder pain. *Id.* Dr. Albert recommended a series of cervical epidural steroid injections ("CESI") as early as April 2008, but the Workers' Compensation system did not approve these injections, and thus Plaintiff did not begin to receive the series, until after March 2009. *Id.* at 166–67, 197; Def.'s Br. at 12. When CESI only temporarily relieved Plaintiff's pain, Dr. Albert recommended cervical facet blocks, another type of injection. *Id.* at 218–19. The cervical facet blocks were not approved until the following spring. *Id.* at 325. Throughout this period, Dr. Albert also attempted to manage Plaintiff's pain and muscle spasms through a variety of medications, including Skelaxin, Topomax, Percocet, Lidoderm patches, Zanaflex, Lyrica, and Amrix. *Id.* at 129, 158–97, 286–99, 315–76. Dr. Albert concluded that Plaintiff is "[t]emporary [sic] totally disabled." *Id.* at 158–183, 286–99, 315–26.

The ALJ chose not to credit these conclusions of Dr. Mattheos and Dr. Albert for two reasons. First, the ALJ found that Dr. Albert had only described Plaintiff as "moderately and partially disabled." *Id.* at 43. Noting that the terms "moderately" and "partially" disabled "are worker's compensation terms to assess the degree of disability referable to the claimant's usual employment (in this case heavier work)," the ALJ found that Dr. Albert never indicated that Plaintiff was unable to engage in light work. This conclusion is plainly erroneous. Dr. Albert

---

thirty minutes at a time. *Id.* at 386. At the hearing before the ALJ, Plaintiff's attorney explained that Dr. Mattheos had been confused by the format of the initial form, and that if the ALJ had any questions about Dr. Mattheos' evaluation, Dr. Mattheos could provide a letter explaining her intention in filling out the forms. *Id.* at 18–19, 24, 30. The ALJ declined an additional letter, stating that he would take it on "face value" that Dr. Mattheos had been confused. *Id.* at 30.

opined that Plaintiff had a "[m]oderate degree of disability" only in his early evaluations, from April to August 2008. *Id.* at 186–97. Beginning in his September 2008 report, and in every report thereafter, Dr. Albert consistently concluded Plaintiff was "[t]emporary [sic] totally disabled," indicating that he could not work at all at that time. *Id.* at 158–83, 286–99, 315–26. The ALJ's plainly erroneous description of Dr. Albert's conclusion and consequent failure to consider or give controlling weight to Dr. Albert's actual opinion—or provide "good reasons" for not doing so, as required by 20 C.F.R. § 404.1527(c)(2)—constituted plain error. *Calzada*, 753 F. Supp. 2d at 269 ("[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error.") (internal quotation marks omitted); *Baldwin v. Astrue*, No. 07 Civ. 6958, 2009 WL 4931363, at *18 (S.D.N.Y. Dec. 21, 2009) (Howell, J.) (same); *Pagan v. Chater*, 923 F. Supp. 547, 556 (S.D.N.Y. 1996) (Conner, J.) (same).

To the extent the ALJ was uncertain about whether Dr. Albert's conclusion that Plaintiff was "[t]emporary [sic] totally disabled" indicated that Plaintiff was unable to conduct lighter forms of work, the ALJ was under an obligation to seek additional evidence from Dr. Albert. An ALJ may not reject a treating physician's conclusions for lack of clear findings without first attempting to fill in the gaps in the administrative record. *Rosa*, 168 F.3d at 79 (concluding it was error for the ALJ to attach significance to omissions by the treating physician rather than seek more information). "It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Sec'y of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)). This duty arises from the agency's regulatory obligation to develop a complete medical record before making a disability determination, 20

13

C.F.R. § 404.1512(d)-(f) (2011),[3] and exists even where, as here, the claimant is represented by counsel.

The ALJ discredited Dr. Mattheos' conclusion that Plaintiff was unable to work because the ALJ found that conclusion "contradicted by the weight of the clinical and diagnostic evidence [in the] record." Tr. 43. The ALJ did not specify which clinical and diagnostic evidence contradicted Dr. Mattheos' conclusion, and did not apply the factors required under 20 C.F.R. 404.1527(c) to determine how much weight to afford Dr. Mattheos' opinion, failures that arguably require reversal. *See, e.g., Norman v. Astrue*, No. 10 Civ. 5839, 2012 WL 4378042, at *4 (S.D.N.Y. Sept. 25, 2012) (Carter, J.) (ALJ's conclusion that treating physician's opinion could not "be afforded great weight" and failure to apply the statutorily required factors was sufficient to require remand). Nevertheless, the thrust of the ALJ's opinion suggests that the ALJ discredited Dr. Mattheos' conclusions because several independent physicians who examined Plaintiff found that he was able to work, either with or without restrictions. This Court will therefore review the ALJ's analysis to determine whether the ALJ properly departed from the treating physician rule. *See* 20 C.F.R. § 404.1527(c)(2).

After an extensive review of the record, this Court concludes that the ALJ improperly applied the treating physician rule and remand is required because the ALJ failed to acknowledge or consider substantial evidence supporting Dr. Mattheos' opinion. The ALJ completely failed to mention or consider the opinion of Dr. Thomas Dowling. Tr. 244–47. Dr. Dowling evaluated Plaintiff after his discogram on January 18, 2010, and diagnosed Plaintiff with discogenic

---

[3] This regulation was substantially amended in 2012. However, because Plaintiff applied for benefits in 2009, the ALJ denied benefits in 2010, and Plaintiff filed this action in 2011, the Court will apply the pre-amendment version of the regulation. *See Jimenez v. Colvin*, No. 11 CV 4599, 2013 WL 1332630, at *8, n.4 (E.D.N.Y. Mar. 31, 2013) (Hurley, J.) (applying pre-amendment version of statute).

syndrome lumbar and cervicalgia facet syndrome. *Id.* at 245. Based on the results of the

discogram, Dr. Dowling concluded that Plaintiff had a 100% temporary impairment. *Id.* at 246.

The ALJ also completely failed to mention or consider the opinion of Dr. Jimmy Lim, an

independent physician who examined Plaintiff on January 26, 2010. *Id.* at 418–21. Dr. Lim

diagnosed Plaintiff with cervical strain with left sided radiculopathy, lumbar strain with bilateral

radiculopathy, and left shoulder sprain. *Id.* Based on this evaluation, Dr. Lim concluded

Plaintiff had a moderate orthopedic disability, which prevented him from working at that time.

*Id.* In addition, as described *supra*, the ALJ erroneously found Dr. Albert had not determined

whether Plaintiff was unable to conduct light work when, in fact, Dr. Albert had concluded

Plaintiff was "[t]emporary [sic] totally disabled." *Id.* at 43, 158–83, 286–99, 315–76. The ALJ

thus entirely ignored substantial evidence in the record supporting Dr. Mattheos' opinion which,

if properly considered, would have supported application of the treating physician rule and a

finding that Plaintiff is disabled. While the ultimate determination of disability rests within the

discretion of the ALJ, the ALJ's failure to consider this relevant evidence was plain error. *See*

*Calzada*, 753 F. Supp. 2d at 269; *Baldwin*, 2009 WL 4931363, at *18; *Pagan*, 923 F. Supp. at

556.

    Moreover, the ALJ failed to acknowledge or consider significant deficiencies in the

opinions of additional independent physicians who examined Plaintiff in connection with his

claim for workers' compensation benefits. For example, the ALJ failed to acknowledge that

several of these physicians never reviewed Plaintiff's MRIs before diagnosing him. *See* Tr. 391

(Dr. DeJesus reviewed only one of three MRIs), 395 (Dr. Miller did not review Plaintiff's

MRIs), 402–03 (Dr. Zimmerman considered only one of Plaintiff's three MRIs), 410 (Dr. Litman

did not review any of Plaintiff's MRIs). While some, but not all, of these examinations occurred

before one or more of Plaintiff's MRIs were available,[4] the ALJ failed to consider whether and how the information in these subsequent MRIs undermined the physicians' earlier conclusions. In addition, the ALJ failed to address the significance of the administration of CESI and facet blocks for more than two years after Plaintiff's accident. These later treatments, which did not begin until April 2009, cast doubt on earlier examinations, like that of Dr. DeJesus on May 6, 2008, which found Plaintiff could work without restrictions. *Id.* at 391. Indeed, no other physician found Plaintiff could work without restrictions.

For all of these reasons, the Court concludes the ALJ erred in discrediting the medical opinions of Plaintiff's treating physicians.

### B. Plaintiff's Credibility

Plaintiff also argues the ALJ improperly rejected Plaintiff's description of his pain and the extent of his impairments. A Plaintiff's "subjective [evaluation of his] pain is an important factor to be considered in determining disability." *Perez v. Barnhart*, 234 F. Supp. 2d 336, 340 (S.D.N.Y. 2002) (Knapp, J.) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)); *cf. Chase v. Astrue*, No. 11-CV-0012, 2012 WL 2501028, at *12 (E.D.N.Y. June 28, 2012) (Mauskopf, J.) ("Evidence of pain is an important element in the adjudication of [disability insurance benefits] claims, and must be thoroughly considered in calculating the functional capacity of a claimant." (citing, *inter alia*, *Ber v. Celebrezze*, 332 F.2d 293, 298–99 (2d Cir. 1994))). While an ALJ has the discretion not "to credit [claimant's] testimony about the severity of [his] pain and the functional limitations it caused," *Rivers v. Astrue*, 280 Fed. App'x 20, 22

---

[4] An MRI was conducted on Plaintiff's cervical spine on April 2, 2008; a second MRI of Plaintiff's lumbar spine was taken on September 16, 2008; and an MRI of Plaintiff's left shoulder was taken on February 11, 2009. Tr. at 198–99, 234–35; *see supra* note 1. At the time of Dr. DeJesus's and Dr. Miller's examinations, only the cervical spine MRI was available. At the time of Dr. Zimmerman's and Dr. Litman's examinations, all three MRIs were available.

(2d Cir. 2008), the assessment must be made "in light of medical findings and other evidence," *Mimms*, 750 F.2d at 186 (internal quotation marks omitted).

"[S]ymptoms, including pain, will be determined to diminish [a claimant's] capacity for basic work activities to the extent that . . . [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). To that end, the Commissioner has established a two-step inquiry to evaluate a claimant's contentions of pain. *See* 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce" the pain alleged. 20 C.F.R. § 404.1529(c)(1). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Chase*, 2012 WL 2501028, at *12 (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

In making a credibility determination regarding a claimant's testimony about his or her symptoms, including pain, an ALJ must consider seven factors:  1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of claimant's pain and other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms; 5) any treatment, other than medication, the claimant has received; 6) any other measures the claimant employs to relieve the pain or other symptoms; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain or other symptoms. C.F.R. § 404.1529(c)(3)(i)-(vii).

In this case, Plaintiff testified at the hearing before the ALJ that he is no longer able to work because of the severity of his pain. Plaintiff claims that his neck is "really, really in a lot of pain," his left shoulder is constantly "burning," he has numbness in both of his hands, his lower back "burns," and his legs hurt him constantly. Tr. 21, 32. Plaintiff experiences pain both sitting and lying down, and he is only able to sit for about twenty or thirty minutes before his feet go numb. *Id.* at 32. Plaintiff takes multiple medications to alleviate pain and muscle spasms, including Darvocet, Topomax, Skelaxin, and a Lanacane Patch. *Id.* at 31. Plaintiff has also received CESIs and facet blocks, but did not receive any pain relief from the facet blocks. *Id.* at 17–18, 33.

In his written opinion, the ALJ found "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* at 44. The ALJ did not specify how Plaintiff's contentions of pain are inconsistent with the medical evidence. More importantly, the ALJ's credibility analysis was insufficient. The ALJ did not explicitly refer to or discuss any of the factors listed in 20 C.F.R.1529(c)(3). *See Grosse v. Comm'r of Soc. Sec.*, No. 08–CV–4137, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (Garaufis, J.) (finding that ALJ "committed legal error" because he failed to consider any of the credibility determination factors except the claimant's daily activities). Nor did the ALJ "identify what facts he found to be significant, [or] indicate how he balanced the various factors." *Simone v. Astrue*, No. 08–CV–4884, 2009 WL 2992305, at *11 (E.D.N.Y. Sept. 16, 2009) (Sifton, J.). Nor did the ALJ address how Plaintiff's continuous treatment for pain over a more than two-year period, including numerous medications, CESIs, and facet blocks, affects

18

Plaintiff's credibility. *See Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 437 (S.D.N.Y. 2010) (Sullivan, J.) (ALJ's failure to consider claimant's use of pain medication over a two-year period required remand). The ALJ's lack of specificity and failure to meet Social Security Administration requirements for evaluating the credibility of Plaintiff's subjective complaints require remand.

### C. Evaluation of the Medical Evidence

Finally, Plaintiff argues that the ALJ improperly evaluated the medical evidence because the ALJ improperly rejected the opinions of his treating physicians in favor of various non-treating medical examiners. Pl.'s Br. at 23. This argument has already been addressed under the Court's analysis of the treating physician rule.

### IV. Remedy

Federal regulations explicitly authorize a court, when reviewing decisions of the Social Security Administration, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa*, 168 F.3d at 82–83 (quoting *Pratts*, 94 F.3d at 39) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. However, if the record before the Court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g.*, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

For the reasons stated *supra*, the Commissioner's decision must be remanded.  The ALJ failed to apply the proper legal standard with respect to the treating physician rule and evaluation of claimant's credibility, errors which normally require remand.  In addition, although there is substantial evidence of Plaintiff's disability—including considerable evidence the ALJ did not explicitly consider—there is also conflicting evidence from which it is conceivable the Commissioner might find that Plaintiff is not disabled.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson*, 402 U.S. at 399) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  Accordingly, the case should be remanded to the Social Security Administration for further consideration and new findings consistent with this opinion.

**SO ORDERED**

Dated: Brooklyn, New York
     April 26, 2013

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge